# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1445V

| | | |
|---|---|---|
| JEREMY ADAMS, | * | Chief Special Master Corcoran |
| Petitioner | * | Filed: July 22, 2025 |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES, | * | |
| Respondent | * | |

## RULING ON ENTITLEMENT[1]

On September 20, 2019, Jeremy Adams filed a petition for compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] Petitioner alleges that an influenza vaccine he received on October 3, 2018, caused "adverse effects," including "symptoms of pain and abscesses." *See generally* Petition (ECF No. 1). The vaccine he received was administered by a Kentucky mobile vaccination entity that was later determined to have exercised inadequate safety control over its vaccines, resulting in numerous vaccinated individuals experiencing comparable abscess injuries.

Respondent opposes Petitioner's claim, arguing that the Act's "severity" requirement cannot be met. After a careful review of the entirety of the parties' submissions, however, I find there is preponderant evidence that the alleged injury persisted for at least six months post-vaccination. *See* 42 U.S.C. § 300aa-11(c)(1)(D).

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Ruling will be available to the public in its present form. *Id.*

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2012) ("Vaccine Act" or "the Act"). Individual section references hereafter will be to § 300aa of the Act (but will omit that statutory prefix).

I.      **Relevant Procedural History**

This matter was initiated at the same time as a number of related petitions brought by similarly-situated claimants.[3] Respondent raised an overarching objection to these claims—that they did not fall within the ambit of the Program due to third-party negligence that resulted in the subsequent abscess injuries. The parties consented to resolution of entitlement in one "test case," the results of which could then be applied to the related cases. On April 25, 2024, I ruled in favor of the petitioner in the test case, finding that the administration of the influenza vaccine had caused him to experience a right shoulder skin abscess associated with a bacterial infection. *See Silvers v. Sec'y of Health & Hum. Servs.*, No. 20-1V, 2024 WL 2799285 (Fed. Cl. Spec. Mstr. Apr. 25, 2024).

On September 17, 2024, I held a telephonic status conference (under the auspices of the test case matter) to discuss the remaining cases. I proposed at that time that Respondent evaluate the related matters and determine if entitlement could be conceded in light of my ruling, or if facts specific to the remaining cases required different treatment. I later ordered the parties in the fall of 2024 to resolve damages, or to propose a briefing schedule for their dispute. After some delay, Petitioner filed a motion for ruling on the record in this matter. *See* Motion, dated May 16, 2025 (ECF No. 49) ("Mot."). Respondent opposed it (combining his brief with a Rule 4(c) Report) on June 26, 2025, arguing therein that the Act's six-month severity requirement could not be met. (ECF No. 51 ("Opp.")). Petitioner filed a reply in further support of his motion, appending to it some additional evidence that he purports supports severity. Reply, dated July 2, 2025 (ECF No. 52) ("Reply"). The matter is now ripe for decision.

II.     **Factual Background**

Petitioner was 38 years old at the time of vaccination, and received the vaccine in issue on October 3, 2018, from the same mobile vaccination entity discussed in *Silvers*. Ex. 10 at 1–2. Petitioner has alleged that "sometime following the administration" of the vaccine he began to experience shoulder pain. Affidavit, dated Oct. 7, 2019, filed as Ex. 10 (ECF No. 25-3).

On January 4, 2019 (approximately three months after vaccination), Petitioner saw Dr. James Rollins, reporting approximately six weeks of redness at the injection site plus swelling with drainage. Ex. 1 at 18. Dr. Rollins assessed Petitioner with "injection with contaminated needle

---

[3] *See generally Silvers v. Secretary of Health and Human Servs.*, No. 20-1V, 2024 WL 2799285 (Fed. Cl. Spec. Mstr. Apr. 25, 2024); *Lykins v. Sec'y of Health & Hum. Servs.*, No. 19-1444V (Fed. Cl. Spec. Mstr., filed Sept. 19, 2019); *Thomas v. Sec'y of Health & Hum. Servs.*, No. 19-1443V (Fed. Cl. Spec. Mstr., filed Sept. 19, 2019); *Mynhier v. Sec'y of Health & Hum. Servs.*, No. 19-1441 (Fed. Cl. Spec. Mstr., filed Sept. 19, 2019); *Helton v. Sec'y of Health & Hum. Servs.*, No. 19-1440 (Fed. Cl. Spec. Mstr., filed Sept. 19, 2019). *Silvers* involved different counsel (who represented a different group of petitioners), but raised the same causation theory, and counsel in this matter agreed to be bound by the *Silvers* determination.

right lateral deltoid," and "skin abscess of right arm." *Id.* at 20. It was proposed that a culture be taken, and that Petitioner's arm be monitored for signs of infection. *Id.*

On January 8, 2019, Petitioner underwent an open debridement of his right arm. Ex. 1 at 13. He then followed up with Dr. Rollins on January 11, 2019. *Id.* At that time, Petitioner's arm felt sore, but he reported otherwise doing well. *Id.* The plan was to keep his arm elevated, apply ice periodically, and to change the dressing, and Petitioner was prescribed an antibiotic for infections. *Id.* at 15.

Mr. Adams was seen again that same month, by Dr. Rollins and then by an infectious disease specialist. Ex. 1 at 9, Ex. 8 at 34–38. During this timeframe, Petitioner reported some arm pain associated with wound care, but no drainage or evidence of further infection. Ex. 1 at 11. The sutures were removed, and Petitioner was advised to pursue home care. *Id.* He did, however, display some evidence of residual inflammation, and was prescribed additional medication for an intended course of one to three months, depending on the clinical response. Ex. 8 at 34–38. By the end of January 2019, other than some bloody drainage Petitioner's wound had grown smaller, and the medications he was receiving were helping despite residual arm redness. Ex. 1 at 5, Ex. 8 at 25–30.

Petitioner's improvement continued on into February. Ex. 8 at 13–18, Ex. 1 at 2. On February 28, 2019, now over four months post vaccination, he had a follow-up visit with the infection specialist. Ex. 8 at 1–5. Although he was at this time still on medication, the wound no longer required packing, and he denied any arm issues like numbness and tingling. *Id.* It was proposed, however, that he remain on medication through mid-April. It has not been established on this record that Petitioner in fact took a full course of the medicine prescribed, although Petitioner alleges that he continued to take the medications through June 2019. Mot. at 1.

On April 22, 2019, Mr. Adams was examined by an internist for unrelated concerns (and he did not at this time mention his vaccine-related abscess or any sequelae of it—although it was listed as an "active problem"). Ex. 2 at 65–68. The following month, he underwent a lumbar fusion procedure, attending several post-operative treater visits thereafter. Ex. 2 at 1–24. He was also treated throughout 2019 for congestive heart failure. *Id.* at 28–114; But none of these records mention his previous arm abscess. No further records regarding Petitioner's treatment in the time period afterward have been filed.

### III. Parties' Arguments

Petitioner claims that he experienced residual effects and/or complications for more than six months after the administration of the vaccine. Mot. at 2. In particular, he emphasizes both the medication he was prescribed (which he allegedly continued to receive more than six months from

onset), as well as the "permanent and very noticeable" scarring he has incurred. *Id.* at 1–2. In a reply, Petitioner has offered some photographic evidence to support his severity contentions. In particular, he has filed a photo of his scar from the abscess, representing that it depicts the scar's "current state." Affidavit, dated July 3, 2025, filed as ECF No. 52-1; Photograph (filed as ECF No. 52-3). The photo is undated, however, and Petitioner has not provided any specific statement as to when it was taken, or otherwise offered any details as to its authenticity.

Respondent maintains that Petitioner has not satisfied the statutory "severity" requirement for his vaccine injury, by demonstrating that sequelae from his abscess persisted at least through April 2019 (assuming an immediate onset at the time of vaccination). Opp. at 6, 7. Although Petitioner's initial affidavit purports that his injury persisted this long, Respondent argues that this does nothing to advance his claim. *Id.* at 4. To support this, Respondent cites *Hanna v. Sec'y of Health and Hum. Servs.*, No. 18-1455V, 2021 WL 3486248, at *11 (Fed. Cl. Spec. Mstr. July 15, 2021), which states that affidavits "specifically drafted for use in prosecution of petitioner's claim" are less reliable than "[c]ontemporaneous records prepared independently of litigation."

Instead, the record in this case demonstrates only abscess-specific treatment through late February. And by that time, Petitioner's abscess scar was only a "small, scabbed, lesion without redness." Opp. at 6 (*citing* Ex 8 at 1–8). Treatment thereafter was for unrelated health issues. And onset could have been as late as December 2018 (*see* Ex. 9 at 1)—in which case severity would need to have been established through June 2019, but records do not support that conclusion. Opp. at 6. (Respondent also argued that Petitioner had not filed any images of his shoulder, although Petitioner did so on reply).

### IV.     Statutory Severity Requirement

The petitioner carries the burden of establishing the matters required in the petition by a preponderance of the evidence. §13(a)(1)(A). One such requirement is "documentation demonstrating severity—generally, that the petitioner "suffered the residual effects or complications of such [vaccine-related] illness, disability, injury, or condition for more than 6 months after the administration of the vaccine." § 11(c)(1)(D)(i)9; *see also Black v. Sec'y of Health & Human Servs.*, 33 Fed. Cl. 546, 550 (1995) (reasoning that the "potential petitioner" must not only make a prima facie case, but clear a jurisdictional threshold, by "submitting supporting documentation which reasonably demonstrates that a special master has jurisdiction to hear the merits of the case"), *aff'd*, 93 F.3d 781 (Fed. Cir. 1996) (internal citations omitted).

Congress has stated that the severity requirement was designed "to limit the availability of the compensation system to those individuals who are seriously injured from taking a vaccine." H.R. REP. 100-391(I), at 699 (1987), reprinted in 1987 U.S.C.C.A.N. 2313–1, 2313–373, cited in

4

*Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011), *cert. denied*, 132 S.Ct. 1908 (2012); *Wright v. Sec'y of Health & Human Servs.*, 22 F.4th 999, 1002 (Fed. Cir. 2022).

The Act prohibits finding a petition requirement "based on the claims of a petitioner alone, unsubstantiated by medical records or by medical opinion." §13(a)(1). Medical records must be considered, *see* §13(b)(1), and are generally afforded substantial weight. *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993). *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

It is thus certainly the case that factual matters required to prove elements of a Vaccine Act claim may be established by a mix of witness statements and record proof, with the special master required to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184 (2013) (citing §12(d)(3); Vaccine Rule 8), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

## ANALYSIS

The medical records objectively preponderate in favor of a finding that Petitioner's injury persisted for more than six months post-vaccination. The primary item of evidence that resolves this dispute in Petitioner's favor is the photograph of the abscess scar itself, which appears to still exist even though treatment of the abscess ended several years ago (and within the six-month severity period). While there are some reasonable evidentiary questions about the authenticity of this photo, I find that its submission (with an affidavit from Petitioner that the photo reflects his shoulder as of the time of filing) is enough to preponderate in favor of a determination that it is accurate and timely.

A scar left by a vaccine injury can constitute an injury sequela, as other special masters have recognized. *See, e.g.*, *Skinner-Smith v. Sec'y of Health & Hum. Servs.*, No. 14-1212V, 2023 WL 3043904, at *4 (Fed. Cl. Spec. Mstr. Apr. 21, 2023) (deeming existence of residual scar tissue "knot" due to resolved cellulitis as basis for at least a *de minimis* damages award); *Yost v. Sec'y of Health & Hum. Servs.*, No. 18-288V, 2022 WL 4593029, at *11–12 (Fed. Cl. Spec. Mstr. Aug. 29, 2022) (awarding damages for small permanent scar due to SIRVA). This is therefore sufficient to meet the Act's severity of requirement, since the photo allows for the conclusion that the scar persists.

Here, Petitioner has not established any *other* sequela from the abscess scar, such as ongoing tenderness or pain and hence no future award of pain and suffering would be tenable). Indeed, the scar itself is a minimal, non-concerning (if unsightly) remnant of the abscess, which this record reflects was easily and completely treated within six months of onset (whatever date that might have been). Thus, whatever pain and suffering award Petitioner seeks in this case should be fairly minimal (and consistent with what similarly-situated claimants have received in recent related cases).

## CONCLUSION

Petitioner has provided preponderant evidence sufficient to meet the severity requirement and is otherwise entitled to compensation. The parties shall file a Status Report on or before **Friday, August 15, 2025**, setting forth their progress in resolving damages in this case.

**IT IS SO ORDERED.**

/s/Brian H. Corcoran
Brian H. Corcoran
Chief Special Master